IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERRY A. PARSONS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. 11-0452-N |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| Of Social Security, | ) |

ORDER

In this action, plaintiff appeals the final decision of the Commissioner denying his claim for a period of disability and disability benefits ("DIB") and his claim for supplemental security income ("SSI") benefits. Upon joint consent of the parties (doc. 22), this matter has been referred to the undersigned for entry of judgment (doc. 23). The parties have waived oral argument (doc. 21). After careful consideration of all matters in the record, including the briefs of the parties, it is hereby ORDERED that the final decision of the Commissioner be REVERSED and this case REMANDED to the Commissioner for further proceedings consistent with this opinion.

Background

Plaintiff filed his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on May 5, 2009, alleging mental impairments and carpal tunnel syndrome. Plaintiff's SSI application claimed an onset date of July 3, 2008, and the DIB application claimed that plaintiff became disabled beginning on March 8, 2008. Doc. 14 at 144, 148. After his claims were denied, plaintiff timely requested and received a hearing before an Administrative Law Judge ("ALJ"); the hearing was held on September 27, 2010. Plaintiff was represented by Attorney Colin Kemmerly at the hearing. The ALJ issued an unfavorable

decision on December 3, 2010. Following denial of review by the Appeals Council, on July 28, 2011, the decision of the ALJ became the final decision of the Commissioner. Plaintiff timely filed the instant appeal.

### Claims

Plaintiff claims that the ALJ erred by: a) rejecting the opinion of John R. Cranton, M.D., plaintiff's treating psychiatrist, improperly substituting her own medical opinion for that doctor's opinion, and b) construing an assertedly unclear statement by the treating physician without seeking clarification from Dr. Cranton.

### Legal Standard

Scope of Judicial Review.

In reviewing claims brought under the Social Security Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. See, 42 U.S.C. § 405(g); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Chater, 84 F.3d at 1400; Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991). See also, Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence

is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Lynch v. Astrue, 358 Fed.Appx. 83, 86 (11th Cir. 2009); Martino v. Barnhart, 2002 WL 32881075, * 1 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

Statutory and Regulatory Framework.

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. See 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. Patterson v. Bowen, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. See 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a),

416.905(a). A person is entitled to disability benefits when the person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520, 416.920 (2010). The Eleventh Circuit has described the evaluation to include the following sequence of determinations:

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[1]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). See also Bell v. Astrue, 2012 WL 2031976, *2 (N.D. Ala. May 31, 2012); Huntley v. Astrue, 2012 WL 135591, *1 (M.D. Ala. Jan. 17, 2012).

---

[1] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

The burden of proof rests on a claimant through Step 4. See <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. Id.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). Id. at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. <u>Id</u>. It also can contain both exertional and nonexertional limitations. Id. at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. Id. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 ("grids"),or hear testimony from a vocational expert (VE). <u>Id</u>. at 1239–40.

<u>Facts</u>[2]

The ALJ found that both conditions cited by plaintiff—major depression and carpal tunnel syndrome—were 'severe' impairments.[3]  His gout, hypertension and diabetes were controlled with medication and were not deemed severe.  The ALJ held that plaintiff's mental impairments did not meet or equal listing 12.04, and that plaintiff had the residual functional capacity to perform light work, involving occasional lifting of up 2o 20 pounds, frequent lifting

---

[2] Except where otherwise noted, all facts are drawn from the findings of the Administrative Law Judge, doc. 14 at pp. 18-28.

[3] Pursuant to 20 CFR § 404.1520(c), a severe impairment is one which significantly limits the claimant's physical or mental ability to do basis work activities.

of 10 pounds, no postural limitations on standing, walking or sitting, and with only occasional contact with the public, simple work-place decisions, and few changes to the work place.

Plaintiff had past relevant work as a carpenter and as a driver of a "handivan". The ALJ held that plaintiff could not perform any of his past relevant work. Plaintiff completed the tenth grade. Plaintiff was 40 years of age at the time of his application and 42 at the time of the decision, and so is considered a "younger individual." The ALJ utilized a vocational expert and determined that plaintiff was not disabled.

The challenged aspect of the ALJ's decision involves the ALJ's consideration of plaintiff's medical evidence of depression. Plaintiff was diagnosed and treated with depression by Dr. John R. Cranton, a psychiatrist, and was evaluated in a consultative examination by Dr. Lucile T. Williams, who saw the plaintiff on October 21, 2010. With regard to plaintiff's depression, the ALJ made the following findings:

> Office records from Dr. John R. Cranton show treatment from June 25, 2009 to May 4, 2010. On June 25, 2009, the claimant reported he had been significantly depressed over the last 8-9 months. He admitted to mood swings and difficulty coping with stresses. He had had difficulty expressing his anger at times. On occasion, he reported hearing voices talking to him when no one else was present. He also reported difficulty with concentration and stated that his memory was not as good as it once had been. He had been having difficulty working. Trazodone helps him sleep. His past medical history included hand pain, chronic gastritis, hypertension and chest pain. He lives with his mother and is separated from his wife. He attends church on an irregular basis. Dr. Cranton stated that the claimant revealed psychomotor retardation. He spoke slowly and softly and there was a paucity of speech. His mood was one of depression. On one occasion, he started to cry and had difficultly holding back his tears. He admitted to feelings of mistrust. Intellectual functioning was estimated in the very low average range. …The impression was major depressive disorder, single episode, with psychotic features. Dr. Cranton felt that the claimant was severely depressed with a suggestion of psychosis. He believed he was in need of hospitalization. On September 28, 2009, the claimant reported that he was doing fairly well and taking his medicines as prescribed. He was not working. He was attentive. He did not admit to any suicidal thought and did not appear significantly depressed. His aspect was blunted. Dr. Cranton stated that since he was not working, he could utilize this time to be talking with a vocational rehabilitation counsel and

maybe working on his GED.  He was referred to vocational rehabilitation.  On November 2, 2009, his affect was somewhat blunted but he was not agitated.  He denied suicidal thought, intent or plan and there was no evidence of adverse medication effect.  Dr. Cranton was attempting to help him set up an appointment with a vocational rehabilitation counselor, at least to help give him some guidance with regards to potential employment.  His medication regimen was continued.  On December 7, 2009, he did not appear morbidly depressed.  He stated that Geodon was sapping his energy, so they were going to try a lower dosage.  On January 13 2010, he mentioned no adverse effects with his medications.  He was alert, attentive and cooperative.  On March 12, 29010, he was alert, attentive and cooperative.  He did not appear agitated.  He did not appear withdrawn and did not exhibit any signs of adverse medication effect.  His Geodon was changed to Seroquel.  On May 4, 2010, Dr. Cranton stated that the claimant was not able to return to his work on scaffolds because of the medication, [sic] he was taking and that he should not work around heights.  On May 4. 2010, he reported that Seroquel had been of help and Lexapro continued to help his mood.  On September 15, 2010, Dr. Cranton completed a Mental Residual Functional Capacity Questionnaire.  Dr. Cranton opined that the claimant has mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, often has difficulties in maintaining concentration, persistence or pace and one or two repeated episodes of decompensation.  Dr. Cranton was of the further opinion that the claimant's ability to understand, carry out and remember instructions, respond appropriately to supervision, co-workers or to customary work pressures; perform simple or repetitive tasks or complete work related activities in a normal workday or workweek was only mildly impaired.  He also noted that the claimant has complications of gastrointestinal reflux disease and carpal tunnel syndrome. … He further noted that a side effect from the claimant's medications is drowsiness. …

On October 21, 2010, Dr. Lucile T. Williams[] evaluated the claimant at the request of the Social Security Administration.  The claimant reported insomnia with only 4 hours sleep a night.  He reported his mood as depressed and his self-esteem as "not good."  He stated that he has "very little energy."  He waited until eh exam was concluded to add that he was experiencing hallucinations.  Although he reported hearing voices telling him what to do and seeing things, he was unable to remember when he last hallucinated and give significant details regarding these alleged hallucinations.  Dr. Williams noted that office records from Dr. Cranton reflected that the claimant only reported experiencing hallucinations in June 2009 and did not report any further history of auditory hallucinations from July 2009 to March 2010.  In addition, there were no records to indicate that the claimant every [sic] reported experiencing visual hallucinations.  The impression was major depressive disorder, recurrent.  Dr. Williams noted that the claimant was seen as only being somewhat motivated to do his best during the evaluation.  Some of his statements appeared questionable.  Dr. Williams completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) Dr. Williams was of the opinion that his ability to understand, remember and carry out simple instructions, make judgments on

>simple work-related decisions and understand and remember complex instructions and make judgments on complex work-related decisions was only mildly impaired. His ability to carry out complex instructions was moderately impaired. His ability to interact appropriately with supervisors and co-workers, respond appropriately to usual work situations and to changes in a routine work setting was mildly impaired. He had no problems interacting appropriately with the public.
>
>As for the opinion evidence, more weight is given to Dr. Williams' opinions. With the exception of carrying out complex instructions, Dr. Williams' opinions are supported by the claimant's treatment notes, which indicated that he was improving with medications. Dr. Williams' opinions are consistent with the opinions of Dr. Cranton with the exception that Dr. Cranton marked often in estimated deficiencies of concentration, persistence and pace. Dr. Cranton's own treatment notes do not support this limitation. His treatment notes from Exhibit 16F indicate that on more than one occasion Dr. Cranton was attempting to help the claimant set up an appointment with a vocational rehabilitation counsel, at least to help give him some guidance with regards to potential employment. This indicates that Dr. Cranton is of the opinion that the claimant is capable of working. On the Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Cranton stated only that the claimant could not return to work on scaffolds or work around heights. While[] Dr. Cranton's initial visit indicated significant depression, a mere two months later the claimant reported that he was doing fairly well and taking his medicines as prescribed. At that time, Dr. Cranton also noted that the claimant was attentive, did not admit to any suicidal thought and did not appear significantly depressed. His office notes indicated the claimant had improved significantly. Therefore, Dr. Cranton's opinions are given some weight but not determinative weight to the opinion regarding concentration. The determinative weight is given to Dr. Williams.

Doc. 14, at pp 24-26.

## Discussion

The plaintiff argues that the ALJ erred both in rejecting the opinion of the plaintiff's treating physician in favor of that of a consultive examiner and the ALJ's own opinions, as well as in interpreting a statement by the treating physician as undermining plaintiff's claim without asking the doctor if that interpretation was correct.

The primary depression-related impairment relevant to this appeal is the frequency and/or severity of plaintiff's deficiency in concentration, persistence and pace. Dr. Cranton opined that plaintiff suffered such deficiency "often." Doc. 14 at 339. At the hearing, the vocational expert

8

("VE") called by the ALJ stated his opinion that such an impairment would preclude plaintiff from maintaining employment. Doc. 14 at 42. Thus, the dispute over the ALJ's decision to discount that opinion is potentially dispositive of this appeal.[4]

The ALJ gave preference to the opinion of the consultive examiner, Dr. Williams, who performed two examinations on plaintiff, only one of which occurred prior to her opinion on concentration, persistence and pace. After the first examination on July 20, 2009, Dr. Williams completed a Mental Residual Functional Capacity form which stated, *inter alia*, that plaintiff had a mild limitation in concentration.[5] The ALJ found the opinion of Dr. Williams, the consultive examiner, a psychologist[6], more persuasive than those of Dr. Cranton, plaintiff's treating psychiatrist. Plaintiff questions the ALJ's basis for that determination.

There is no dispute that plaintiff continued to suffer some level of impairment from his depression—both doctors agree that plaintiff suffered from major depressive disorder, and the ALJ so found. The ALJ specifically said that the opinions of Dr. Cranton and Dr. Williams were consistent except for Dr. Williams' opinion that plaintiff "often suffered deficiencies in concentration. The ALJ concluded that Dr. Cranton's treatment notes showed that plaintiff's condition had improved. Plaintiff challenges that conclusion as not supported by the record.

The regulations provide that, if a treating source opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

---

[4] There is some question, as well, whether Dr. Williams' opinion that plaintiff's deficiencies in concentration and persistence are "mild" is truly at odds with the opinion of plaintiff's treating psychiatrist that plaintiff suffered deficits in concentration "often"; one relates to severity and the other to frequency.  The VE testified based on frequency of problems in this area.

[5] Dr. Williams also conducted a second examination on October 21, 2010, and completed a form addressing plaintiff's ability to perform work-related activities.  This second evaluation does not address limitations previously considered, including those in concentration, persistence and pace.

[6] *See* doc. 14 at 159.

substantial evidence in the claimant's case record, the ALJ will give it controlling weight. If not, it nonetheless will be given substantial or considerable weight unless "good cause" is shown to the contrary. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (*quoting* Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "'Good cause' exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id. (*citing* Lewis, 125 F.3d at 1440).

In general, the Commissioner will generally "give more weight to opinions from ... a source who has examined [the claimant] … [and] treating sources," 20 C.F.R. §404.1527(c)(1) – (2), and "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. §404.1527(d)(2), 416.927(d)(2). The Commissioner will give greater weight to a doctor "the longer that source has treated [the claimant and] the more times [the claimant has] been seen." 20 C.F.R. §404.1527(c)(2)(i) – (ii). The reasons for this rule involve the opportunity for a treating physician to form an opinion of a patient over time.  See 20 CFR §404.1527(c)(2).

"[A]lthough [the Court] generally considers a psychiatrist to be a 'better informed' source of information regarding a patient's condition than a psychologist, a licensed or certified psychologist is considered to be an acceptable medical source under the social security regulations ... The Court acknowledges, however, that often-times, the psychologist works more closely with the patient than the psychiatrist. So, it comes down to a case-by-case decision." Fuller v. Massanari, No. Civ.A. 00–0763–RV–M, 2001 WL 530425, *3 n. 3 (S.D.Ala. May 11, 2001); *see also* 20 C.F.R. §404.1527(c)(5).   Where, as here, the psychiatrist had a long-term

10

treating relationship with plaintiff and the psychologist saw plaintiff once before giving the relevant opinion, that determination is simplified.

In rejecting the treating physician's opinion on this issue, the ALJ relied on a questionable construction of Dr. Cranton's attempts to arrange for plaintiff to consult with a vocational rehabilitation counselor.  Specifically, the ALJ determined that Dr. Cranton's express finding that plaintiff suffered "often" from deficiencies in concentration, persistence and pace was somehow contradicted by an inference the ALJ made from the entries in plaintiff's treatment notes that Dr. Cranton had tried to arrange for plaintiff to obtain evaluation and counseling by the vocational expert.  The ALJ determined those efforts that "Dr. Cranton is of the opinion that the clamant is capable of working."  Doc. 14 at 26.

Dr. Cranton's efforts to set up an appointment for plaintiff with a vocational rehabilitation counsel are at least as consistent with a referral to a specialist in that area, an admission that the doctor was not expert in such matters, or with unanswered questions concerning the existence of any jobs which someone like plaintiff could perform as they are with Dr. Cranton's purported, but unexpressed, certainty that plaintiff could work.  The ALJ's determination is even less reasonable in light of the fact that the Commissioner, not the doctor, is deemed the appropriate person to determine whether a claimant can work.  In regulations and in case law, the Commissioner has consistently asserted that such an opinion on the ultimate issue is reserved to the Commissioner and that the opinion of the doctor is not within his area of expertise and is irrelevant.  See e.g. 20 C.F.R. §§ 404.1527(e), 416.927(e) (explaining that an opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is disabled or unable to work, is not considered a medical opinion and is not given any special significance, even if offered by a treating source, but will be taken into consideration); Flowers

v. Comm'r of Social Sec., 441 Fed.Appx. 735, 742 n.5 (11th Cir. 2011); Lawton v. Comm'r of Social Sec., 431 Fed.Appx. 830, 834 (11th Cir. 2011); Gainous v. Astrue, 402 Fed.Appx. 472, 475 (11th Cir. 2010). If the ALJ believes that Dr. Cranton's attempts to arrange for vocational evaluation or counseling for plaintiff are contrary to his expressly-stated medical opinions on plaintiff's limitations, the ALJ has the option of seeking clarification from Dr. Cranton on remand. The ALJ's conclusion is not supported by substantial evidence and does not constitute "good cause" necessary to justify discounting the opinion of plaintiff's treating physician.

Dr. Williams stated in her first evaluation that "no hospital records or records from Dr. Cranton were available." Doc. 14 at 302. Dr. Williams' second evaluation did not address plaintiff's difficulties in concentration, and thus did not supplement or adopt her prior opinion on that issue in light of a review of Dr. Cranton's treatment notes. The lack of such notes relating to the treatment of plaintiff for depression diminishes the weight which the Commissioner is allowed to give Dr. Williams' opinion on the issue of plaintiff's limitations in concentration. See 20 C.F.R. 404.1527(c)(6) (Commissioner will give greater weight based on "the extent to which [the source] is familiar with the other information is [the claimant's] case record."). Further, the court has trouble accepting the ALJ's conclusion that the plaintiff's treating physician is wrong in opining that plaintiff "often" has concentration problems based on evidence gleaned from a single examination. At most, the consultive examiner's observation that she saw no evidence of such limitation during that first visit can support a conclusion only that "often" does not mean "always"; a single hour's concentration is not inconsistent with an opinion that plaintiff "often" suffered such limitation.

Based on the factors set forth by the Commissioner for evaluating the opinions of acceptable medical sources, the undersigned concludes that the ALJ's rejection of the opinion of

Dr. Cranton and the adoption of the opinion of Dr. Williams on the issue of the frequency of plaintiff's deficiencies in concentration resulting from his depression is not supported by substantial evidence in the record presented.

## Conclusion

For the foregoing reasons, it is hereby ORDERED that the final decision of the Commissioner be REVERSED and this case REMANDED to the Commissioner for further proceedings consistent with this opinion.

DONE this the 28th day of August, 2012.

/s/  Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE